UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PACIFIC WOODTECH CORPORATION,
A Washington Corporation,

          *Plaintiff*

v.

DANIEL SEMSAK,

          *Defendant.*

CASE NO. 2:19-cv-01984-BJR

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

## I. INTRODUCTION

Before the Court is Plaintiff Pacific Woodtech Corporation's motion for temporary restraining order and order to show cause. Dkt. No. 6. Having reviewed the motion, the declarations included thereto, and the record of the case as it exists, the Court with grant in part and deny in part Plaintiff's motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

Plaintiff is a Washington state corporation and represents itself as a "leading manufacturer of engineered wood products, specifically LVL and I-Joists." Dkt. No. 1 at ¶ 1; *see also id.* at ¶ 6. Defendant is a former executive who, until October of this year, worked for Plaintiff. *See id.* at ¶ 7. His last position at the company was as Northeast and Northwest Business Development Manager. *Id.*

In this position, Plaintiff represents that Defendant had access to a "wide variety of

[Plaintiff's] most confidential, proprietary, and trade secret information." *Id.* at ¶ 9. According to Plaintiff, Defendant agreed to be bound by Plaintiff's confidentiality policies, including that he would not "divulge or transmit any of [Plaintiff's] confidential or trade secrets." *Id.* at ¶ 8 *see also* Dkt. No. 6 at 5–6 (providing an excerpt from Plaintiff's employment handbook addressing Confidential and Proprietary Information).

According to Plaintiff, on October 9, 2019, Defendant informed Plaintiff that he was leaving their employ. Dkt. No. 1 at ¶ 10. Defendant informed Plaintiff that he would be taking a position with Plaintiff's industry competitor, Murphy Company ("Murphy"). Dkt. No. 6 at 2, 6. Before leaving, Plaintiff's CEO, James Enright, reminded Defendant of his obligations to return all property belonging to Plaintiff and not to misappropriate company trade secrets. Dkt. No. 1 at ¶ 11.

Shortly thereafter, members of Plaintiff's company attended an industry trade show and while there were informed that Defendant was present at the show and was divulging Plaintiff's "confidential [] pricing strategies involving current [] customers." *Id.* at 12.

Plaintiff responded with a cease and desist letter instructing Defendant to cease divulgence of company trade secrets and requesting that he return any company property. *Id.* at ¶ 13; *see also* Dkt. No. 1-1 (cease and desist letter). In reply, Defendant sent a letter reaffirming his commitment not to disclose or misuse Plaintiff's confidential and proprietary information and enclosing a thumb drive which he represented contained "all the written information related to" his employment with Plaintiff, "confidential or otherwise," that he retained after leaving the company. Dkt. No. 1 at ¶ 14; *see also* Dkt. No. 1-2 (Defendant's response letter).

Plaintiff then hired a third-party expert who conducted a forensic analysis of Plaintiff's

computer-related activities in his final weeks with the company. According to Plaintiff, the analysis revealed that Defendant "downloaded sensitive [] Trade Secrets onto multiple flash drives that [Defendant] took with him when he left" Plaintiff's employ. Dkt. No. 1 at ¶ 15; *see also* Dkt. No. 6 at 9 (providing tabular logs of downloaded materials). Plaintiff represents that there is "no reason for any [of Plaintiff's] employee[s] to download such data." Dkt. No. 6 at 9.

Based on the foregoing, Plaintiff filed the current suit. Plaintiff's complaint, filed on December 4, 2015, asserts causes of action for (1) theft of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*; (2) misappropriation of trade secrets under Washington Revised Code ("RCW") 19.108; (3) breach of duties of loyalty and confidentiality; and (4) replevin. Dkt. No. 1 at ¶¶ 20–43. On December 5, 2015, Plaintiff moved for a temporary restraining order which: (1) enjoins Defendant from disclosing or using Plaintiff's confidential information and trade secrets; (2) requires Defendant to turn over "all of [Plaintiff's] confidential information and trade secrets . . . as well as all of [Defendant]'s personal computers and [Defendant]'s work computers" so that Plaintiff may image them to preserve evidence, identify to whom else Defendant may have passed trade secrets, and to prevent further disclosure; (3) requires Defendant to preserve all evidence; (4) requires Murphy to preserve all evidence; and (5) requires Defendant to show cause as to why a preliminary injunction preventing him from possessing, disclosing, or using Plaintiff's confidential and trade secrets is not warranted. Dkt. No. 6 at 3–4.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 65(b) empowers federal district courts to issue temporary restraining orders ("TRO"). FED. R. CIV. P. 65(b); *see also* Local Rules W.D. Wash. LCR 65(b).

3

To obtain a TRO, the movant must "meet the standards for issuing a preliminary injunction." *Navigant Consulting, Inc. v. Milliman, Inc.*, No. 18-1154, 2018 WL 3751983, at *3 (W.D. Wash. Aug. 8, 2018). This includes the requirement that the movant show that (1) it is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Local Western District of Washington Court Rule 65 states that "[m]otions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." Local Rules W.D. Wash. LCR 65(b)(1). Plaintiff's motion indicates that it has notified Plaintiff of this lawsuit and the pending motion. Dkt. No. 6 at 4. Further, the Court will order the parties to appear on Wednesday, December 11, 2019 at 9 a.m. via teleconference to discuss the terms of this order. The Court encourages Defendant, if he requires additional time, to seek leave from the Court in modifying the time and date of the conference, including for the purpose of retaining counsel.

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiff is likely to succeed on the merits of at least some of its claims. For example, Plaintiff advances a claim for misappropriation of trade secrets under RCW 19.108, which permits an injunction of "[a]ctual or threatened misappropriation" WASH. REV. CODE § 19.108.020(1); *see also Earthbound Corp. v. MiTek USA, Inc.*, No. 16-1150 RSM, 2016 WL 4418013, at *9 (W.D. Wash. Aug. 19, 2016). The statute defines both "trade secrets" and "misappropriation." *See* WASH. REV. CODE § 19.108.010(2), (4).

In its motion, Plaintiff asserts that Defendant has misappropriated proprietary information likely to constitute trade secrets under Washington law including "intellectual property related to [Plaintiff]'s new and developmental products; customer and sales information (including key contacts, order history and preferences, and other confidential customer information); pricing information and strategies; financial information and analyses; market competitive analyses; business, sales, and marketing strategies; and operations information." Dkt. No. 6 at 6. *See Earthbound*, 2016 WL 4418013, at \*9–\*10 (holding that "detailed information about [Plaintiff]'s current and prospective customers, pending projects, bids, pricing, product design, and other elements of its business constitute trade secrets"). The Court finds that Plaintiff has demonstrated a likelihood of success on the merits.

**B. Irreparable Harm**

Plaintiffs asserts irreparable harm in the form of "losing clients, profit margin, [and] revenue." Dkt. No. 6 at 15. Such loses easily constitute irreparable harm. *See Navigant*, 2018 WL 3751983, at \*4 (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("The potential to lose customers, employees, goodwill, and revenue 'certainly support[s] a finding of the possibility of irreparable harm.'"). The Court finds that Plaintiff has demonstrated the likelihood of irreparable harm if the TRO is not granted.

**C. Balance of the Equities**

The balance of the equities also points in Plaintiff's favor. The relief that the Court will grant in the form of the temporary retraining order against further dissemination of trade secrets and preservation of evidence merely preserves the status quo. *See Navigant*, 2018 WL 3751983, at \*4 ("[t]here is minimal prejudice to Defendants because the TRO simply preserves the status

quo"). As such, there is minimal harm to Defendant or Murphy, as Defendant may continue his employment with Murphy. *See id.* (finding minimal harm where order "does not prevent [former employee] from continuing to work for [new employer"). The Court finds that the balance tips in Plaintiff's favor.

### D. Public Interest

Finally, misappropriation of trade secrets is "harmful not only to the individual or entity whose secrets are purloined, but also to the public." *Earthbound*, 2016 WL 4418013, at *10. Therefore, it is in the public interest to grant the TRO.

### E. Bond

Federal courts may only grant TROs if "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). This requirement, however, may be waived where the Court concludes "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Navigant*, 2018 WL 3751983, at *4 (citing *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). As the Court will merely order Defendant not to further disclose trade secrets, the Court finds that there is minimal damage to be sustained from its order. As such, the Court will not require a security bond.

## V. CONCLUSION

The Court will grant Plaintiff relief in the form of enjoining future dissemination of its trade secrets. Also, the Court will grant Plaintiff's requests to have Defendant and Murphy preserve the evidence in whatever form currently available. Further relief the Court will not grant at this time. Therefore, the Court GRANTS in part and DENIES in part Plaintiff's motion for

6

temporary restraining order and order to show cause, Dkt. No. 6, and orders as follows:

1. Defendant is enjoined from disclosing or using Plaintiff's confidential information and trade secrets;

2. Plaintiff's request for an order requiring Defendant to turn over his personal and work computers is DENIED;

3. Defendant is required to preserve all evidence in whatever form currently available related to Defendant's confidential information;

4. Murphy Company is required to preserve all evidence in whatever form currently available related to Defendant's confidential information;

5. The parties are to appear for a hearing to discuss the terms of this order via teleconference on Wednesday, December 11, 2019 at 9 a.m., and;

6. Plaintiff shall serve a copy of this order on Defendant and Murphy Company.

DATED this 6th day of December, 2019.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE